Gilbert Waddell v. Commissioner.
Waddell v. Commissioner
Docket No. 24483.
United States Tax Court
1951 Tax Ct. Memo LEXIS 265; 10 T.C.M. (CCH) 344; T.C.M. (RIA) 51107; April 11, 1951
*265 Held, taxpayer was not, during the taxable year, a bona fide resident of Afghanistan and, accordingly, was not entitled to the exemption from taxation by the United States provided by section 116 (a) (1), I.R.C., as amended by the Revenue Act of 1942. James F. Butler, Esq., for the petitioner. John D. Picco, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $2,362.65 in petitioner's income tax for the year 1947. The only issue here presented is whether petitioner qualifies under section 116 (a) (1) so as to exclude from gross income the salary earned by him in the taxable year for personal services rendered in a foreign country. Findings of Fact Most *266 of the following facts were stipulated: Petitioner is an individual citizen of the United States who timely filed his Federal income tax return for the year 1947 with the collector of internal revenue for the district of Idaho at Boise, Idaho. Petitioner and Mable Waddell, his wife, were married in 1919 and divorced in 1946. As the issue of this marriage, there were born three daughters, all living. At the time of the divorce the two older daughters were and still are married and living with their respective husbands. The younger daughter, Joanne Waddell, was then and still is a minor, whose care and custody were by the divorce decree awarded to petitioner. The minor daughter resides with her married sister, Mrs. T. A. Burda, at 421 - 8th Street, Huntington Beach, California. Petitioner provides for and finances her upkeep and schooling. Petitioner has been a single man since the entry of the divorce decree on February 22, 1946. Petitioner was born in Kansas in 1897, and prior to May 1946 made his residence in Irwin, Idaho. He was, and is, an engineer by occupation, and in 1921 accepted employment as an engineer with the Bureau of Reclamation, U.S. Department of Interior. Petitioner *267 was continuously employed by the Bureau of Reclamation from 1921 until May 3, 1946, when he resigned to accept employment with Morrison-Knudsen Afghanistan, Inc., a Nevada corporation. In his letter of resignation, dated April 19, 1946, petitioner stated that he was resigning "in order to accept private employment with a company engaged in development of irrigation projects in foreign countries." During his employment with the Bureau of Reclamation, petitioner had acquired a Civil Service P-3 rating and such retirement pension rights as provided by the governing laws and regulations. Petitioner signed a contract of employment with Morrison-Knudsen Afghanistan, Inc., on May 9, 1946. Among other provisions of such contract were the following: "2. Place of Employment "The services of Employee shall be performed in Afghanistan at any one or more of the places therein which may be designated by Employer, or, at Employer's option, at such other place or places outside said country which Employer may designate in connection with the performance of said construction contract. * * *
"4. Period of Employment "The period of services provided for by this Contract shall be twenty-four *268 (24) months at the site of the work after Employee's arrival at such site, provided that in the event Employer's construction contract is completed or terminated before the expiration of said period, this Contract shall thereupon terminate, and Employer shall only be obligated to pay Employee for services rendered to the date of such termination or completion and salary during the return trip to the United States as provided in Paragraph 6 and return travel expenses as provided in Paragraph 8. * * *
"6. Date of Commencement of Salary "Salary shall commence four days prior to the date on which Employee has been advised to report at point of leaving the continental limits of the United States enroute to the site of the work. Except as provided in Paragraph 10 herein, salary shall continue for four days after Employee returns to the continental limits of the United States, * * *. * * * "8. Return Travel Expense "If Employee completes this contract in accordance with the terms hereof and said contract is not terminated by Employer under the provisions of Paragraph 10 hereof, he shall be returned from job site to the point of hire at Employer's expense. Employer shall *269 select the mode of transportation. * * *. * * *
"10. Termination of Contract "If the services of Employee are not satisfactory to Employer or if he is not qualified for the position for which he is hired, or is negligent in his duties, or displays bad temper, or is or becomes addicted to the use of alcoholic drinks or drugs, or is insubordinate, or contracts venereal disease, Employee may be discharged by Employer and this contract shall terminate forthwith. * * *. * * *
"12. Board and Lodging "Employer agrees to furnish Employee with board and lodging during the term of this contract, or cash allowance in lieu thereof at Employer's option. * * *
"14. Withholding from Salary "Employee agrees that Employer shall withhold from the salary of Employee an amount equal to the transportation costs referred to in Paragraph 8. However, not more than one-third of Employee's earnings for any month shall be so withheld. The amount thus withheld shall be refunded to Employee upon completion of this Contract. If Employee quits or is discharged for any of the reasons specified in Paragraph 10 hereof, the amount withheld shall be applied by Employer against the costs which *270 Employer may incur in returning Employee to United States and the balance remaining, if any, shall be refunded to Employee. "15. Income or Other Taxes "Employer will pay and not recharge to Employee income or any other taxes imposed by any country on salary earned by Employee under this Contract, other than taxes imposed by United States of America or any state thereof. * * *
"17. Employee to Observe Afghan Laws "The Employee shall respect and obey all Afghan laws, rules and regulations and shall never interfere with the Afghan political or religious affairs either directly or indirectly, and he shall not engage in trade." * * *
The Morrison-Knudsen Co., Inc., is a domestic corporation engaged in the construction business. This company established a foreign division composed of several subsidiary corporations prior to the end of the war for the purpose of contracting for and carrying on construction work in foreign countries. Morrison-Knudsen Afghanistan, Inc. is the subsidiary corporation which operates solely in the Kingdom of Afghanistan. In 1946 Morrison-Knudsen Afghanistan, Inc. entered into a four-year contract with the Kingdom of Afghanistan whereby said *271 corporation agreed to build certain roads and canals. A second four-year contract was executed by Morrison-Knudsen Afghanistan, Inc. and the Kingdom of Afghanistan in April of 1950, providing for the construction of certain storage dams. Petitioner arrived in Afghanistan on June 13, 1946, and worked for two years, the period required by his contract. Petitioner left Afghanistan on June 13, 1948, and returned to the United States at company expense, arriving on June 20, 1948. He remained in the United States for the remainder of the year. On January 22, 1949, he signed a second contract of employment with Morrison-Knudsen Afghanistan, Inc. He left the United States on January 27, 1949, and arrived in Afghanistan on February 6, 1949. Petitioner worked until October of 1949, when the company terminated his contract pursuant to paragraph 4 thereof, because of an enforced reduction of personnel due to temporary curtailment of construction funds. Thereupon, petitioner returned to the United States, at company expense, arriving on October 28, 1949. Petitioner lived in the United States until approximately May 11, 1950, when he signed a third contract of employment with Morrison-Knudsen *272 Afghanistan, Inc. This contract is substantially similar in its terms to the employment contracts dated May 9, 1946 and January 22, 1949. Petitioner departed for Afghanistan on May 11, 1950, and at the time of the trial of this proceeding was serving the company in Afghanistan pursuant to the contract of employment. Petitioner's entire income during the calendar year 1947 was earned by him while employed in the Kingdom of Afghanistan, where he was physically present during the whole of that year. At all times while employed in Afghanistan, petitioner lived in quarters furnished by the company, namely, in a brick building built by the company and maintained for its employees, where he received his board and lodging free of cost. Petitioner was free to obtain outside board and lodging, but he did not, because had he done so he would have had to pay for same out of his own pocket and the board and lodging so purchased would have been inferior. While thus employed in Afghanistan, petitioner maintained no home, residence building or apartment in the United States. Petitioner did not participate in local politics nor did he engage in trade. Petitioner did not pay any taxes to the Afghan *273 authorities, and no tax was ever levied upon him by the Kingdom of Afghanistan, nor did the company pay any taxes on his behalf. While in the United States from June 20, 1948 to January 22, 1949, petitioner visited friends and took care of his personal affairs at Boise, Idaho, and elsewhere, and stayed at the homes of his married daughters and of his sister in California, Idaho and Nevada. He stayed with them for approximately three and one-half months, and for almost two and one-half months he lived in a rented apartment in Berkeley, California. While in the United States from October 28, 1949 to May 11, 1950, petitioner lived approximately one month at the homes of his married daughters and approximately six months in a rented apartment in Berkeley, California. Petitioner was not under any contractual obligation to the company or any other employer, while in the United States during the years from 1947 * to 1949, inclusive, and received no compensation from any employer for work done in the United States, or elsewhere. Petitioner applied for a passport on April 13, 1946, prior *274 to his departure for Afghanistan. At that time he stated that he was domiciled in the United States, and that his permanent residence was 316 Broadway, Boise, Idaho, which is the address of the general business offices of Morrison-Knudsen Co., Inc. On June 24, 1947, petitioner went to the American Consulate in Kabul, Afghanistan, and made application for registration. In this application he stated that his legal residence in the United States was Boise, Idaho, and he further stated that "I intend to return to the United States within one year to reside permanently." On May 26, 1948, he applied for an extension of his passport. On April 26, 1950, he applied for a passport, and one was issued on April 27, 1950. At that time he stated that his permanent residence was 421 - 8th Street, Huntington Beach, California, which is the address of T. A. Burda, petitioner's son-in-law. Petitioner does not own or have any financial interest in 421 - 8th Street, Huntington Beach, California, and has never resided there except as a guest of his son-in-law and daughter. Prior to leaving the United States in 1946, petitioner expressed the thought that, except for vacations, he would be gone from the *275 United States all of his remaining gainful life. His salary abroad was approximately double that which he had ever earned in the United States. During his visits in the United States petitioner expressed himself as expecting to return to Afghanistan as soon as possible. We make the ultimate finding of fact that petitioner, during the taxable year, was not a bona fide resident of the country of Afghanistan. Opinion VAN FOSSAN, Judge: The present case presents a narrow issue, that is, whether respondent erred in his determination that the petitioner was not a bona fide resident of Afghanistan during the taxable year 1947, and, accordingly, was not entitled to exclude from his gross income compensation received by him for personal services performed in a foreign country under favor of section 116 (a) (1), as amended by the Revenue Act of 1942. [1]
*276 There are almost as many varying shades of definition of the words "residents" and "residence" as there are cases involving the subject. The word "residence" has been characterized as an ambiguous, illusive, flexible or relative term. In some cases it is held to be synonymous with domicile, although generally connoting something quite different. Again, it may be synonymous with "home," or it may not be. One test seems to be generally accepted. When used in a statute it must be interpreted in the light of its context and the purpose and the intent of the framers of the legislation. A full consideration of the legislative history of section 116 (a) (1) will be found in Arthur J. H. Johnson, 7 T.C. 1040, and Downs v. Commissioner, 166 Fed. (2d) 504, affirming 7 T.C. 1053; certiorari denied, 334 U.S. 832. We need not repeat that discussion here. These decisions, and others, indicate that there is no single test to be applied in the present instance. Thus the test applied in Kyle v. Jones, 92 Fed. Supp. 600, that mere physical presence of a taxpayer in a foreign country for the full year ripens the right to exemption is *277 [*] simple and is out of line with better reasoned opinions interpreting the statute, as amended in the 1942 Revenue Act. Each case must rest on its own facts and no single fact is determinative. Weighing all the facts carefully and having studied the several cases on the subject, we believe the record here requires our ultimate finding of fact that petitioner was not, during the taxable year, a bona fide resident of Afghanistan and, therefore, was not entitled to the exemption for taxation in the United States of compensation received in a foreign country. See Arthur J. H. Johnson, supra; Downs v. Commissioner, supra.
Decision will be entered for the respondent. Footnotes
*. The year 1947 in the stipulation is obviously in error, as petitioner was in Afghanistan throughout that year.↩
1. SEC. 116. EXCLUSIONS FROM GROSS INCOME. In addition to the items specified in section 22 (b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter: (a) Earned Income from sources without the United States. - (1) Foreign resident for entire taxable year. - In the case of an individual citizen of the United States, who establishes to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country or countries during the entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts constitute earned income as defined in paragraph (3); but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection.↩